IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREA GALL,<br><br>Defendant. | 4:19CR3117<br><br>**FINDINGS, RECOMMENDATION,<br>AND ORDER** |

Defendant Andrea Gall has filed a motion to suppress evidence obtained in violation of her constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.[1] ([Filing No. 50](#)). Defendant argues the statements she made during the execution of a warrant to search her residence on October 4, 2019 were involuntary. For the reasons discussed below, the motion should be denied.

STATEMENT OF FACTS

After hearing testimony, observing the witnesses as they testified, and reviewing documentary and video evidence, the undersigned magistrate judge finds the following facts are credible:

On October 4, 2019, Probation Officer Angela Smith visited the home of Defendants Andrea Gall and Jose Aguilera Negrete. Negrete was serving a state

---

[1] Defendant's briefing does not include any argument that Defendant Gall's Fourth, Sixth, or Fourteenth Amendment rights were violated. And while stated in the motion, her contemporaneously filed briefing does not mention the alleged unlawful seizure of her cell phone. Moreover, at the outset of the hearing, the parties clarified that the only issue to address was whether Gall's statements while awaiting and during the search of her residence were voluntary. As such, the undersigned magistrate judge finds Gall has waived any claims for suppression, if any, under the Fourth, Sixth, and Fourteenth Amendments, including any claim regarding seizure of her cell phone. See NeCrimR 12.3(b)(1)(C) ("A party's failure to brief an issue raised in a motion may be considered a waiver of that issue.").

probationary sentence and he had failed to report for drug testing. Once inside the residence, Smith noticed what appeared to be a gun in plain view on the couch. She questioned whether the gun was an airsoft or BB gun, or whether it was an actual firearm. After the police arrived, the gun was determined to be a .22 caliber handgun. Negrete reported buying it about a week earlier for $180, and said he was getting ready to sell it to a friend. Negrete, a convicted felon, he was arrested and taken to the police station. Law enforcement secured the handgun and the residence while they applied for warrant to search the residence.

The search warrant application was granted. While searching Defendant's residence, investigators found a scale that appeared to have methamphetamine residue on it. At that point, Gall told investigators that the 'stuff' inside the bucket on top of the refrigerator belonged to her. ("That bucket up there has stuff in it too. It's mine." (Ex. 1 at 00:04:00, video file)). A search of the bucket revealed a plastic bag containing what appeared to be a large quantity of methamphetamine. At that time, the investigators handcuffed Gall and informed her that she would be detained.[2]

At the hearing on Gall's motion to suppress, the government presented testimony from several individuals who interacted with Gall on October 4, 2019. Angela Smith is a SSAS probation officer for the State of Nebraska in District 9, Grand Island. Justin Slizoski is a police officer in Grand Island, Nebraska and is an investigator assigned to the drug task force. Bradley Brooks is a day shift patrol officer in Grand Island. Brandon Kirkley is a drug investigator attached to the

---

[2] The Government does not intend to offer during its case in chief any statements made by Gall in response to questioning after she was handcuffed. It does intend to offer statements that were not the product of police questioning. (Filing No. 78 at CM/ECF p. 3). Moreover, even those statements arising from custodial interrogation but arguably in violation of Miranda were voluntary and may still be used for impeachment of Defendant Gall's testimony, provided they are not excluded for reasons other than suppression under the Fifth Amendment.

Central Nebraska Drug and Safe Streets Task Force, and he is a police officer with the City of Grand Island. (Filing No. 78 at CM/ECF p. 36). Brooks and Kirkley each have received training to identify people who may be under the influence of drugs. (Filing No. 78 at CM/ECF pp. 25, 38). Smith, Brooks, and Kirkley testified that on October 4, 2019, Gall was conscious, appeared to be of at least a normal level of intelligence, responded appropriately to questions, appeared to be properly oriented to time and place, and had no difficulty walking. She initially appeared sleepy but became more awake and alert throughout the encounter. (Filing No. 78 at CM/ECF pp. 14-15, 26-27, 44-45)  Smith, Brooks, and Kirkley testified that there was nothing about Gall's appearance that caused them to believe that she might be under the influence of drugs. (Filing No. 78 at CM/ECF pp. 15, 27, 45)

Gall presented expert testimony by Dr. Jason Ourada, a physician and psychiatrist who prepared a forensic psychiatry evaluation of Gall for this case. Dr, Ourada testified that Gall's use of methamphetamine on October 3, 2019, impacted her mental status on October 4, and that her trauma history impacted her mental status during the encounter with police. He opined that the officers searching the residence, and the presence of male officers "could have been triggering" even absent any threatening or aggressive words or actions directed toward Gall. (Filing No. 78 at CM/ECF pp. 81, 86-87, 103). Dr. Ourada had reviewed the video of the officers' encounter with Gall. He agreed that Gall appeared conscious, gave answers that were responsive to the questions asked, was properly oriented to time and place, and appeared to be at least of average intelligence. (Filing No. 78 at CM/ECF p. 94). She appeared to have no trouble walking and her rate of speech and blinking appeared to be normal. (Id. at 95). Dr. Ourada opined that on October 4, Gall experienced depression in the aftermath of methamphetamine use on October 3, but she was not having overt, observable, psychotic symptoms. (Filing No. 78 at CM/ECF p. 100).

ANALYSIS

Defendant Gall has not argued that she was in custody, or that advisements under Miranda were required. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Defendant Gall's brief, the only issue discussed is the voluntariness of her statements to police. Her only allegation is that her statements were "not voluntary, of rational intellect, and given of her own free will due to her intoxication as well as mental status at the time the statements were given to law enforcement." (Filing No. 50). Defendant Gall asserts the statements were made when she was "coming down" and still intoxicated on methamphetamine. Defendant Gall also asserts the methamphetamine caused her to suffer "an altered mental state in which she was 'withdrawn, guarded, and depressed,'" during the execution of the search warrant. (Filing No. 52 at CM/ECF p. 4). Defendant Gall offers Dr. Ourada's opinion that Gall's assertions of ownership of the evidence "appeared contrived, and she did not appear to make sustained attempts to protect herself." (Id.)

> As to the admissibility of statements:
>
> The ultimate test remains . . . voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973) (citing Culombe v. Connecticut, 367 U.S. 568, 602 (1961)). A court must determine whether a statement was voluntary by looking at the totality of the circumstances, which may include the youth of the accused, lack of education, or low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of questioning, and the use of physical punishment such as the deprivation of food or sleep. Id. at 224-25. A statement is involuntary

when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair her capacity of self-determination. United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).

The officers who encountered Defendant Gall found her to be conscious, alert, of at least average intelligence, and responsive to basic questions. This assessment is confirmed by both the video evidence of the encounter and Dr. Ourada's professional assessment. Dr. Ourada agreed that there was nothing threatening or aggressive in the officers' interaction with Gall. The court further notes that Gall offered statements without being questioned. These factors support a finding that the statements were voluntary.

Nonetheless, Gall argues that she had recently used methamphetamine and that she suffers from mental or emotional health issues making the mere presence of male police officers a "trigger," thereby making her statements involuntary. "Intoxication and fatigue do not automatically render a confession involuntary." United States v. Casal, 915 F. 2d 1225, 1229 (8th Cir. 1990). Instead, "the test is whether these mental impairments caused the defendant's will to be overborne." United States v. Gaddy, 532 F. 3d 783, 788 (8th Cir. 2008). Gaddy held a confession and consent to search were voluntary where the suspect had recently used methamphetamine and had not slept for five days, but Defendant did not appear or act intoxicated, appeared to be "sober and in control of his faculties," and the officers had no knowledge of Defendant's recent drug use and sleep deprivation. Id. (citing Casal and United States v. Contreras, 372 F.3d 974, 977 (8th Cir. 2004)). The Eighth Circuit has repeatedly rejected voluntary drug intoxication as a reason to suppress a statement as involuntary where the defendant was coherent, composed, and cooperative, and there was no substantial police coercion. See United States v. Jones, 842 F. 3d 1077 (8th Cir. 2016); United States v. Byrne, 83 F.3d 984, 989 (8th Cir. 1996); United States v.

5

Makes Room, 49 F.3d 410, 415 (8th Cir. 1995); United States v. Martin, 28 F.3d 742, 745 (8th Cir. 1994); United States v. Bordeaux, 980 F.2d 534, 538 (8th Cir. 1992).

Moreover, the underlying purpose of the exclusionary rule is to deter objectively unreasonable police conduct, i.e., conduct which an officer knows or should know violates a suspect's constitutional rights. See Illinois v. Krull, 480 U.S. 340, 352–353 (1987). As such, a motion to suppress is aimed at excluding evidence obtained through police misconduct.

> The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion. See United States v. Washington, 431 U.S. 181, 187, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977); Miranda, supra, 384 U.S., at 460, 86 S.Ct., at 1620. Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." Oregon v. Elstad, 470 U.S. 298, 305, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985). The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. See Moran v. Burbine, 475 U.S., at 421, 106 S.Ct., at 1141 ("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.... [T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements"); Fare v. Michael C., 442 U.S. 707, 726–727, 99 S.Ct. 2560, 2572–2573, 61 L.Ed.2d 197 (1979) (The defendant was "not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit.... The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court in Miranda").

Colorado v. Connelly, 479 U.S. 157, 169–70 (1986).

Here, there is no evidence of coercive behavior by law enforcement. There is no evidence that an objectively reasonable officer under the circumstances

presented would have any reason to suspect Defendant Gall had a heightened susceptibility to male police officers such that her will was overborne by <u>any</u> such contact even in the absence of coercion. To the contrary, Gall appeared coherent and composed, with no outward signs of intoxication or mental impairment. Under such circumstances, there is no basis for suppressing Gall's statements as involuntary. The motion to suppress should be denied.[3]

      IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 50) be denied in its entirety.

      The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

      IT IS ORDERED that as to both defendants the jury trial of this case is set to commence before John M. Gerrard, Chief United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **January 11, 2021**, or as soon thereafter as the case may be called, for a duration of five (5) trial days. This case is subject to the prior trial of criminal cases and such other civil cases as may be scheduled for trial before this one.  Jury selection will be held at the commencement of trial.

      Dated this 17th day of November, 2020.

      BY THE COURT:

      *s/ Cheryl R. Zwart*
      United States Magistrate Judge

---

[3] A motion to suppress is not a means for obtaining a pretrial determination on whether a Defendant's statements are inadmissible despite the lack of police misconduct. Therefore, I specifically do not address whether Gall's incriminating statements were contrived or false and were made as part of her psychological response to the mere presence of male law enforcement officers. That question must be decided by pretrial motion under Rule 104(c) or by the jury at trial.